We'll hear argument next this morning in Case 09-1272, Kentucky v. King. Mr. Farley. Mr. Chief Justice, and may it please the Court, the issue for you today of whether or not police can impermissibly create exigent circumstances arises from the improper suppression of reasonably seized evidence after reasonable warrantless entry. The test set forth by the Kentucky Supreme Court is improper for several reasons. The first of which is that this Court has routinely held that the subjective intent of police officers when effecting a warrantless entry is irrelevant. And the Kentucky Supreme Court say that it was looking to a subjective state of mind on the part of the police? Well, the Kentucky Supreme Court's first prong of their test, and I believe it's in our Petition Appendix, on page 26 — oh, I'm sorry. Their discussion starts on page 44a and carries over to 46a. The first question of their test is whether or not the officers acted in bad faith in an attempt to purposefully evade the warrant requirement. That didn't apply in this case. That is correct. The second prong of the Kentucky Supreme Court's test is whether or not the actions of the Respondent in this case or the occupant of the home would have been foreseeable by the police officers before they knocked and announced their presence. Now, the problem with the foreseeability test is that it doesn't apply in this case. Why is that subjective? Why isn't that foreseeable to a reasonable police officer similarly situated? Well, Justice Ginsburg, it isn't directly a subjective inquiry. However, police officers are trained to expect and foresee illegal activity so that they may carry out the duties of their job in protecting the citizens. So under a foreseeability test, a reasonable officer will always foresee illegal activity in response to his actions, be it walking down the street or knocking on your door. A reasonable officer will always foresee illegal activity. And for that reason, the Kentucky Supreme Court's test is completely unworkable. Several of the other circuits and the lower courts have adopted tests that also attempt to add an extra exception, an unwarranted closure of the exigent circumstances exception that narrows the use of that exception by police officers. The test that the Commonwealth would propose is a simple lawfulness test. Now, under this test, as long as an officer behaves lawfully, there should be no suppression of evidence seized after an otherwise reasonable. Roberts. Roberts. So you have an apartment building where the police know from experience there's a lot of illegal activity, a lot of drugs, drug transactions. Every two weeks, they walk through and knock on every door and wait for evidence of the destruction of drugs. Is that all right? Well, there's – I would say yes, if there is probable cause, as well as the reason for the purpose. The probable cause, of course, comes when they hear the, you know, flushing and the, you know, hiding or whatever behind the door. Well, I would assert that there are two separate issues here. You must have probable cause separate from the existence of exigent circumstances. In this case, there was probable cause due to the smell of marijuana. They go to the apartment building and they sniff at every door, and when they sniff when a strong smell of marijuana emanates from the door, then they go through this routine. But they do it as a matter of every two weeks, as the Chief said. As a routine matter, they don't just knock on every door, but they knock on the doors where they smell marijuana. And they do that just as a routine in all the buildings where they suspect there may be drug – drugs being stashed. Justice Ginsburg, under a simple lawfulness test, since the officers have not violated the Fourth Amendment prior to the exigency arising, there would be no need to suppress any evidence. That would be perfectly fine for the officers to do that, and it may not be the most to the Chief Justice when he said, I think this was the Solicitor General's position, that the police can routinely knock at a door and wait to see if they hear a toilet flushing. I've taken that out of this case, but because I don't know what noise means, but your answer would be yes. Yes, if probable cause exists. Sotomayor, why do you need the probable cause inquiry? What does it have to do with anything? Well, under the Fourth Amendment, for reasonable warrantless search to occur, a police officer must have to go in. Before they can go in, they've just heard a toilet flushing. They must have probable cause coupled with exigent circumstances. I'm sorry. I think I've got two different probable causes that's causing me some confusion. I understand their requirement of probable cause, that they hear sound of evidence being destroyed and therefore enter. Is that or are you talking about the probable cause to think there's something going on in the first place? There are two separate issues here. They must have probable cause aside from exigent circumstances, then they must also have a reasonable belief. To knock on the door? They must have probable cause to knock on the door? No, Justice Kennedy. They can, just as any citizen could, they could knock on the door. However. Take us through it chronologically. The policeman is walking through the hallway. He has no probable cause. He could knock on the door. He smells marijuana. The smell of marijuana. Then he knocks on the door. When does the probable cause arise and when must it arise? Well, the smell of marijuana would give probable cause to obtain a search warrant. Once he knocks on the door and hears noises consistent with the destruction of physical evidence, then an exigency has arised. Now the officer has both probable cause and an exigent circumstance.  Kagan But I don't understand why the smell of marijuana is necessary. So this goes back to what Justice Sotomayor was saying. You don't need probable cause to knock on a door. Knocking on a door is perfectly lawful. So if there's just a lawfulness test, the knock is fine. And then when you hear whatever it is that you hear that you think creates exigent circumstances, whether it's a toilet flushing or whether it's just noise, that, too, gives you the ability to go right in. So if it's just lawfulness, you don't need the marijuana smell even, do you? Well, I think we're confused. In order to enter with exigent circumstances, you must also have separate probable cause. And it's that you could have knocked. Probable cause beyond thinking evidence is being destroyed. Yes, correct. That is correct. It might just be somebody going to the toilet, right? It could be. It could be. It could very well be. And I suspect that the reason the toilet is flushing is somebody's trying to get rid of evidence, and in order for that to be the case, you have to have smelled the marijuana. Yes, Justice Scalia. So there's only one probable cause, right? Yes. Okay. Yes. The exigent circumstances is a reasonable belief based upon the totality of the surrounding circumstances here, given that the officers had a reasonable belief that they were chasing a fleeing felon. They had a reasonable belief that this was the doorway he had entered. Then you couple that with the noises that they heard, they testified were based on their training experience. May we just go back over, you're putting in the fleeing felon, but as far as I understand from this record, it was never shown that the dealer that the police were following was aware that he was following and that he was fleeing from them. This is the – it's not part of the question we presented because we granted only on the exigent circumstances, but I didn't think that there was – the dealer wasn't called, he wasn't asked, did you even know that the police were following you? That's correct, Justice Ginsburg. However, in we cannot divorce the officer's chase of this suspect, regardless of whether he knew of their hot pursuit or not, we cannot divorce those facts from what the officers knew when they knocked on the door. Roberts. Sure you can. There's nothing illegal about walking down the hall and knocking on somebody's door. And if, as a police officer, you say, I smell marijuana, and then you hear the flushing, then there's probable cause. You don't need any business about the dealer and the breezeway and all that at all. Certainly. Certainly, Mr. Chief Justice. You're absolutely correct. I was – I was just speaking in terms of this case, saying that there were – there was ample evidence that exigent circumstances existed here. A couple of things. May I ask a question that goes back to what you said? You have clarified very nicely that there has to be probable cause to think that there's something wrong going on in the apartment. And you said that is – at that point, when they – the marijuana strong smell comes from the door, at that point, police could go and get a warrant. But then they don't have to because then they knock on the door. Did we start out with a strong presumption that the Fourth Amendment requires a warrant, a strong preference for getting a warrant? So why, in this situation, shouldn't the first response of the police be, instead of knocking, because once they knock, they alert the people in there, let's get a warrant or come back. Well, the officers testified under these circumstances that they believed that they were in hot pursuit of this felon. So at the time they were at the door, they believed he had entered this apartment and was aware of their presence and was destroying evidence of his deal of crack cocaine. So this is completely dissolving. Sotomayor, how does this holding by us not become a simple warrantless entry in any drug case, meaning police knock on the door, suspect doesn't answer it, gets up and moves to their bedroom? Because there's no noise that was described by this police officer. It was simply not answering the door and moving. So if that's all it takes, any police officer will come in and say, in my experience, most drug dealers destroy the evidence when we knock. Aren't we just doing away with Johnson and aren't we just simply saying they can just walk in whenever they smell marijuana, whenever they think there's drugs on the other side? Why do we even bother giving them a warrant? Well, I would disagree with you. I think that when determining whether an exigent circumstance exists, you look at the totality of the circumstances. So in there would be a myriad of cases in which a court would determine that simply based upon the testimony or the noises that were heard, with no surrounding circumstances, that exigent circumstances may not have existed. Scalia's What if the defendants here had not flushed the evidence down, but had answered the door and said yes? Would the policemen have been able to do anything just because they had smelled marijuana? They could have sought a consensual encounter with the offender. Oh, yeah, but you said, oh, heck no, you can't come in, do you have a warrant? Then the officers would not have been able to get this entry. So basically, the police are taking advantage of the stupidity of the criminals, is that right? That's terrible. That's not fair, is it? I don't know if I would phrase it. There is no – there is not a requirement to inform an occupant of a right to denial. However, the officers could not have forced their way into the home. That would have made this a case like this. Sotomayor What if the officers had simply not said we're going to kick the door in? If you don't open it. I believe that's still fine under lawfulness test unless the occupant of the home submits to that show of authority and comes to the door and allows entry. Now, if that's what they've heard, the movement inside or the flushing or whatever, you can't kick it in because you've smelled marijuana. Can you do it because you knock on the door because you smell marijuana, nobody answers, and you kick the door in? Well, I believe that the noises that they heard were consistent with destruction of physical evidence based upon the fact that they heard it. But without that noise, just because of the smell, of course. No, no, of course not. They would have to obtain a warrant at that point. If the person came to the door and denied them consent, they would have to obtain a warrant. If the person did not come to the door and made no exigency arose, then the officers would still have to go and obtain a warrant. This may be a bit rudimentary, but can you tell me why isn't the evidence always being destroyed when the marijuana is being smoked? Isn't it being burned up? Justice Kennedy, I would tend to agree with you. However, I know this Court in Johnson stated that the smell of burning opium was not the destruction of evidence, that the only thing they could have obtained would have been the fumes or the vapors. I tend to disagree with that personally. However, from a legal viewpoint, the simple smell of burning marijuana is not. So the distinction is being destroyed as opposed to being consumed? Correct. That is correct. And how does it – you mentioned Johnson. Yes. And I think the other side says, I mean, there was the same thing except it was a hotel room instead of an apartment building. The police smell in that case, it was – what was it? Well, in what occurred in Johnson, I believe, is completely different than what occurred here. What occurred in Johnson was the officers forced their way into the occupant's apartment, the occupant's hotel room. And then said, consider yourself under arrest. Didn't they smell marijuana or opium or something? Well, they did, and they knocked on the door, and she came to the door, and they forced their way in. There was no – there was no let us in, there was no demand for entry, there was no even ask for consent to enter. They then said, consider yourself under arrest. They searched and then held her under arrest based upon the evidence they obtained. You got that one thing. I thought they heard ruffling noises before they attempted to get into the apartment in the hotel room. There was something about noises. Well, I believe they heard sounds when they knocked on the door, but she actually came to the door. And then the officers forced entry. Here we don't have that. We have no forced entry. These are two different circumstances. Johnson, an exigency did not exist. Here, an exigency does exist. If there are no further questions, I'd like to reserve the remainder of my time. Thank you, Mr. Farley. Thank you. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. If police officers act lawfully in conducting their investigation, they may respond to any exigencies that arise. It is up to police officers to determine how they will collect evidence in any given case, as long as they stay within the confines of the Fourth Amendment. Although securing a warrant, you Could you, does a ruling in this case that any lawful conduct by the police mean that the police knock, somebody gets up in the other side and walks through a closed door and closes a door in the back, and the police say, in my experience, it's consistent with the destruction of property that drug dealers will go into a closed room to get rid of it, is that enough? I don't think so, Justice Sotomayor. I think that in any case Why not? I mean, people, you know, when there's a knock on the door, is the normal human reaction to walk into the other room and shut the door? Well, a person might not That's peculiar behavior, isn't it? A person doesn't have to answer the door. A person might come to the door. They might also ignore who's ever at the door. Both of those options are fine. Is that a common experience, that you knock on a door and all you hear is somebody walking out of the room and shutting a door? I mean, I guess that a person I don't recall it ever happening to me, but maybe I'm a likable fellow and people open the door. I don't I mean, I think that that's certainly a lawful option that somebody has when the police officers knock at their door, and certainly in this case They could say, go away. They could do a lot of stuff. But walk in the other room and shut the door? That's very strange. I guess some people might do that if they don't want to give consent to police entry. I think that in order to go in, based on an exigent circumstance, the police would have to be able to articulate to a court that they objectively, reasonably believed that there was destruction of evidence occurring inside. And what was that here? Because it was kind of vague. They heard movement. What kind of movement? It didn't say nothing about toilet flushing. O'Connell. Justice Ginsburg, it's our position that the Court should assume that there was an exigency in this case. In the Respondent's brief in opposition, he argued that there was insufficient evidence of exigency. The Court nonetheless granted cert on the question of whether a police-created exigency would be okay under the Fourth Amendment. The Solicitor General believes that the Court should assume there was an exigency, and if it agrees with Kentucky on the question presented and then reverses, it should remand to the Kentucky Supreme Court for a determination of whether an exigency existed. The trial court in this case certainly found that the movement inside of the apartment was enough for the officer to reasonably conclude that somebody inside was destroying evidence.  And so the Court granted cert on the question presented in this case that the Court granted cert on. Kagan. Kagan. Kagan. Ms. O'Connell, if I could ask you about the government's proposed standard. You say that as long as each step in the police conduct is lawful, that's sufficient. And each step would be, the way the Fourth Amendment works, each step, we're asking essentially whether each step is reasonable. What some courts have done in addition to that, and this was not the approach of the Court below, but what some courts have done is to say, we also ask a more holistic reasonableness question. We say, is the whole process by which the police operated with respect to this person reasonable? So, for example, we might say, you know, was there time to get a warrant or did it look like the police were just, they preferred not to have to deal with a magistrate? So what's wrong with that sort of standard? In addition to asking whether each step is reasonable, to say, look, is the whole pattern here of what the police did to come up with this evidence reasonable? O'Connell, I think the problem with that test, Justice Kagan, is that police officers have options of how they can conduct searches and seizures. Getting a warrant is one way that they could do that. Getting consent to conduct a search or a seizure is another way. There's no justification in this Court's precedence for requiring police officers to choose one of those options over another if both options are lawful. In this case, the police officers knocked on the door, not sure which apartment the person that they were pursuing fled into, in order to determine whether that was the correct apartment. There's no reason why they needed to get a warrant before knocking on the door and seeking cooperation of the people inside. Kennedy, is it your position that the police can do anything that's lawful, even if the purpose of doing so is to create exigent circumstances? O'Connell, yes. I think that under this Court, the way that this Court has interpreted Fourth Amendment warrant exceptions, as long as there is no violation of the Fourth Amendment, that is okay. The police officers can rely on any ensuing exigency. Kennedy, the question presented in the blue brief used the word impermissible, and we're talking about unlawful. I take it there is a difference in those, or no difference? Well, yes, there is a difference. I think that that comes up in Respondent's argument that if there was an impermissible demand for entry, for example, if the police officer said, I have a warrant, let me in, even though he didn't, as in Bumper v. North Carolina, that that could still be okay under a lawfulness test as long as the suspect reacted by destroying evidence instead of by coming to the door, like in Bumper or Johnson, and going about with a concern. What are the objections to adding in the alternative, or in bad faith? Justice Breyer, the objection to that is simply that in all cases that are founded upon probable cause that are not programmatic searches that are conducted without any individualized suspicion, this Court has repeatedly rejected prongs of a Fourth Amendment that rely on the subjective. No, objectively. I mean, what we're trying to rule out is they hitch, they get this bright idea the police will go and knock at every door, you know. So what about that? Objectively determined bad faith. I'm sorry, I don't get it. My point is a solely unlawfulness test would allow the police to get into the habit of just knocking at every door. But if you say that also it has to survive a bad faith test, where bad faith is objectively, not subjectively determined, then you will rule out the possibility of the police hatching, which I don't know if they would, but hatching such a plan. I guess that it's not totally clear what bad faith would mean in this context. Breyer, there are circuits who have adopted a bad faith test in the alternative with other things than the word unlawful. The Second Circuit uses only the word unlawful, and I thought we took this case to iron out that discrepancy. And if we did, I'd like to know your objection to ironing it out by taking the Second Circuit test but adding on an objectively determined bad faith rule. Justice Breyer, I don't know what it means to act in bad faith in a case like this as a police officer. Maybe it could mean having no reason for knocking on the door other than to create exigent circumstances. Well, Justice Alito, I think that it would be difficult to determine objectively whether that was the case. Well, the police say, oh, I don't want to get a warrant, it's such a bore, we have other things to do. I have a great idea, let's knock at the door. And then, as soon as he starts moving around, I know what he's going to the going into the bathroom means, and we'll hear that and we'll be able to get in. Hey, great idea. Okay. Now, suppose that's the record. I think that there's already a significant risk built into the Fourth Amendment that police officers, if they knock on the door and they don't hear somebody destroying evidence inside, they're going to have to leave and get a warrant. I think that's enough of a reason. You don't know that they're destroying evidence unless you have reason to believe that there is contraband inside. I mean, the hypothetical is an unrealistic one. They knock on the door and somebody moves inside. That doesn't give them any evidence. No, I mean to add, and in fact, there's probable cause. Okay. In addition, he smelled the marijuana. I just was trying to stick to the relevant point. Well, that's a different hypothetical. All right. Add that to the hypothetical. In which they knock on every door under which they smell marijuana. Correct. That's what I mean, and I don't owe the spell out. Right. And I think that there's the Court shouldn't be concerned, and certainly shouldn't be concerned enough to adopt a bad faith or a subjective motivation prong to a test that it creates, which it's not. But what makes that different than knocking on the door and saying, open the door or I'm going to kick it in? You're saying that's lawful, because until the person submits, you're suggesting there's no coercion in that whatsoever. That's true. And, Justice Sotomayor, let me clarify. So why wouldn't that objectively be bad faith if what we find out is that they now have a tactic, which is they go through this building and every time they smell marijuana, hash, or I don't know if crack cocaine smells or not when they're smoking it, but whenever they smell something, they just do that? I think the fact that if the person actually does what the police officer says and answers the door will mean that the evidence would be excluded as a coerced consent search is enough of a deterrent to that sort of policy. So there's no bad faith measure whatsoever in your analysis. And lawfulness is defined by actual physical seizures. So if we have cases that suggest something else, a command to submit, your argument would be lost, correct? I think that's right. If the person submits to the command. Thank you, Ms. O'Connell. Ms. Drake. Mr. Chief Justice, and may it please the Court. The odor of burnt marijuana coupled with Officer Cobb's cursory and equivocal testimony about the sounds of movement he couldn't discern exactly and that his training and experience led him only possibly to conclude with consistent with the destruction of evidence is insufficient to establish exigency. You're describing what you think the evidence was to support exigency, and the suggestion we've heard on the other side is that that's an issue that can be addressed on remand once we, according to the other side, correct the State court's error in that the police cannot create exigent circumstances. So I don't know that it's terribly relevant what the underlying facts about what they heard was. That will be relevant, depending or not, depending on what our opinion says. It's relevant because it goes to whether exigent circumstances existed. And as to the question of whether a remand would be appropriate in this case, the question of whether exigent circumstances existed is logically antecedent in any created exigency case. No, it's not at all. The Court said I don't care whether exigent circumstances existed. You cannot create exigent circumstances. So I don't care whether they were or not. The legal standard is antecedent to the application of the facts. Well, there's no point in delving into whether an exigency was created by the police if there's no exigency to begin with. Well, I think the Court is interested in taking the case in the question whether or not the police may create exigent circumstances and use those exigent circumstances to enter. Whether or not there were exigent circumstances here because of the sound is, it seems to me, a subsidiary question. The other problem with remanding this case for further determination on this issue is, as this Court is aware, the procedural posture of this case is troubling. The case has already been dismissed. There is no potential for further proceedings here. There is no ---- Oh, sure there is. It was dismissed because the State supreme court held you can't bring this evidence in. If we say, oh, yes, you can, then the issue comes live again. That conclusion is dependent on the notion that an indictment is merged with the judgment such that a decision in the common law's favor in this case would vacate the decision of the Kentucky supreme court, which in turn vacates the underlying suppression order, but there is no authority for the notion that an indictment and a judgment merge as a matter of Kentucky law. And so a decision ---- This is the argument you presented to us in the letter, right? Yes, Your Honor. And yet we nonetheless decided to have argument. Yes, Your Honor. So maybe it would be your case, but maybe it would be best to move on to the legal issue. If we move to the question of whether the police have created exigent circumstances, it's important that we're all operating on the same understanding, the facts in this case. This case does not involve a simple knock at the door. And the distinction is important. In this case, at 9.50 p.m., the officers banged on the door as loudly as they could. Did the trial court make those findings? I know that you said it in your brief, and I thought I read the trial court record. I know they knocked loudly. Yes. What else did they do? Yes. And this is located at the appendix to the petition in the bottom of page 3a, carrying on to 4a. The trial court found Detective Maynard, who was accompanying Officer Cobb in the breezeway attempting to locate and arrest the suspect in question, banged on the door of the apartment on the back left of the breezeway, identifying themselves as police officers and demanding that the door be opened by persons inside. Officer Cobb testified at the suppression hearing, and this is at page 22 of the joint appendix. Detective Maynard made contact with the door, announced our presence, banged on the door as loud as we could, announced, police, police, police. This is not the case where they said, open up. Yes. Then Officer Cobb later goes on to explain, and this is on page 24 of the joint appendix. Detective Maynard, with Sergeant Simmons, we explained to them, referring to the occupants of the apartment, we were going to make entry inside the apartment. Roberts. Is that after the exigent circumstances or the alleged exigent circumstances were presented? And that's after they heard that what they thought, and I know you disagree, was the destruction of evidence. It's unclear from the trial court's factual finding what the order of events was. The trial court found, banged on the door of the apartment, identified themselves as police officers, and the truth. Is any of that unlawful? Is knocking loudly on the door unlawful? It's unreasonable. Is it unlawful? Is saying, open up, police, is that unlawful? Well, it's certainly not unlawful in the sense that it violates any provision of the penal code, but this is a Fourth Amendment case, so the question is whether it's making it unlawful. The problem I have is there are a lot of constraints on law enforcement, and the one thing that it has going for it is that criminals are stupid. And we had a case some years ago in which the issue was whether the Washington police could enter buses arriving from the south and randomly ask passengers, do you mind if we look in your luggage? And the mules who were carrying marijuana were stupid enough to say, oh, of course, just to show that they had nothing to fear. And an enormous number of arrests were affected in that fashion. We didn't say that's not fair because you're taking advantage of the ignorance of these poor criminals. We said that's perfectly okay. And it seems to me the same thing is going on here. These people could have answered the door. There's a policeman knocking on the door. All he's saying is open the door. You open the door and say, yes, what do you want? Say, you know, blah, blah, blah. They say, well, get a warrant, shut the door. They didn't do that, but everything done was perfectly lawful. It's unfair to the criminal? Is that the problem? I really don't understand the problem. I have two responses to Your Honor's question. The first is that, and along with this notion that criminals are stupid, and so that's why we get all these criminal cases, there is no difference between what happened in this case and how an innocent person would respond. Recall, Officer Cobb's testimony is simply that after banging, he heard movement. Any innocent person at 10 at night would have to move in order to respond. Alitoson Could I ask you this? It might make a difference to me whether the police demanded entry prior to the time when the alleged exigent circumstances arose. And the only testimony on this point that I am aware of is on pages 22 and 23 of the appendix where the police banged on the door as loud as they could and announced police, police, police, and then Detective Maynard banged on the door and said, this is the police. Now, is there anything more in the record, any evidence that they, prior to the time when they heard what they allegedly heard, they said, open the door? The portion of the joint appendix that I quoted to the Court, we explained to them we were going to make entry, appears on page 24. Right. So, if Your Honor keeps reading. It starts, it says, We knew that there was possibly something that was going to be destroyed inside the apartment. At that point, Detective Maynard, this is after they heard the sounds. After they claimed to have heard the sounds. Yes. Officer Cobb's testimony suggests that the demand came after they heard the sound of movement. The finding by the trial court, however, is that this was all happening simultaneously and in very quick fashion. Is there any evidence of that? Did anybody else testify to what happened? No, Your Honor. Officer Cobb's testimony was all the Commonwealth offered. But the chronology of the demand is not dispositive in this case, because the demand itself is not dispositive. The demand removes any doubt that the officers were not seeking a consensual encounter. But you still have the behavior of banging on the door. Well, does it turn on how loudly they knocked? If they just knock on the door and say, this is the police, is that, is there anything wrong with that? It depends entirely on whether a reasonable person would interpret that behavior as the officer conveying the impression that entry was imminent and inevitable. And this feeds back to Justice Scalia's question, which is, what is unreasonable about what the officers did here? What was there here to make a reasonable person believe that entry was imminent and inevitable? If all that's done is a knock on the door and they say, police, police, police, this is the police, maybe it turns on how loudly they spoke or how loudly they knocked. Is that the point? That is the point. Those are all relevant criteria, because in every Fourth Amendment case we're considering the totality of the circumstances. It seems to me that you're trying to change the case. I mean, this is not a case where they come in and in effect demand entry. My understanding is that the issue in the case is whether or not after a request for entry they can then base probable cause in dispensing with the warrant based on what they hear from behind the door. Now, I know you think that they hear anything, whatever they hear is perfectly innocent, but the issue is when they knock on the door, police, or can we come in, or whatever, and then they hear that, the activity behind the door, they have reason to question and can enter. Now, it seems to me what you're arguing is, well, they did something else. They banged on the door, they yelled police, it wasn't simply knocking on the door and seeking entry. And you may be right again on the facts, but it seems to me that's for later on. I want to know what your position is on whether they can assume, at least for me, they knock and say can we come in or knock and say police, no demand to get in. If I understand Your Honor's question, the officers are engaging in what we would call a true knock and talk. They're seeking, they're on, the scenario is such that no one would doubt they're attempting a consensual encounter. Our position is because that behavior is reasonable, it is not made unreasonable by the fact that evidence may be destroyed, and so suppression would not be the remedy. Breyer. Breyer. So you agree that the court below is wrong, because what they say, as I read it, is irrespective of how reasonably the police behave, if it is reasonably foreseeable that their tactic will create exigent circumstances. And I would think it's reasonably foreseeable when you knock on the door very politely and say to the police that somebody might shout out, hide the pot, all right, that if that's reasonably foreseeable, says the court, then that violates the Fourth Amendment. But we have the Second Circuit that says as long as the police behaved unlawfully it, lawfully, lawfully, it does not violate the Fourth Amendment. And we have the First Circuit that has some kind of bad faith test, plus an unreasonable or improper test. And we have the Fourth and Eighth Circuits that yet have some different kind of test. And one of the things I would be interested in hearing your view on at some point is just what the Chief Justice said, that assuming from your point of view this is a hypothetical case, nonetheless, we would like your view on which of those tests or some other tests is the appropriate test and why. That was the question he started with and Justice Kennedy started with, and I would also be interested in your view on that. The appropriate test is the test that we propose. Under our test, the police act unreasonably when they convey the impression to an object to a reasonable person that entry is imminent and inevitable. Our test follows directly from the Fourth Amendment requirement that people in their homes deserve precision. By conveying the impression that entry is imminent and inevitable, the police are engaging, and they don't have judicial authority for doing that, there's no warrant. They are engaging in behavior that would confuse an ordinary citizen and make him or her uncertain about whether the assertion of right to privacy and security in the home. Kagan. Well, Ms. Drake, if that's the case, in some way you're agreeing with the government. You, too, are saying that it's, that there's a lawfulness test. You're just disagreeing about what's lawful. And to the extent that lawful is defined as a synonym for unreasonable, and to the extent that there does not need to be a completed antecedent Fourth Amendment violation, we would agree. There is area of agreement between the Commonwealth and I and it is on the issue of this knock and talk. Of course police officers need to have the investigative tool of a knock and talk. There's nothing wrong with an officer attempting to gain consensual entry. And our position is that that's not made unreasonable by factors outside the officer's control, no matter how foreseeable. So what took this outside of the category of the ordinary knock and talk? This is not a knock and talk case. This is a knock and announce case or a knock and demand case, which is how the trial court characterized it in the past. Well, I don't know about the labels, but what did they, what did the police do that permitted under a, your understanding of a pure knock and talk? It's the volume of the knocking? Yes. It's the banging, not knocking. It's announcement. Banging, not knocking? Banging, not a soft knock. Not the knock that you would expect a reasonable person to engage in, in the ordinary discourse with another person, or that you would expect from an officer attempting to gain consensual. Scalia. You might have considerable support on the Court for the proposition that if the exigent circumstance is created by unlawful activity by the police, which would include conveying the impression that they are about to kick the door in, then you have a different case. But I thought the case we had before us is what if the police officers are behaving perfectly lawfully and they are not threatening to kick down the door, and they smell the marijuana and then they hear the motion inside, does that justify their going in? And that's what I thought we took the case for. And that's a different question. You're trying to make the police officers' actions unlawful. And I will stipulate that if their actions were unlawful, you have a different case, and probably the evidence would have to be suppressed. But I didn't think we were here to decide that. Whether they knocked too loud, whether they threatened to kick in the door, the opinion below says if they created the exigent circumstances, whether they did so lawfully or unlawfully, they cannot go in. And that's the issue. What the officers did in this case is the functional equivalent of saying we're going to kick in the door. Now, I wouldn't go that far, but it's the functional equivalent of a knock and announce, which is exactly the behavior the police engage in when they are executing a warrant. And it is that behavior that conveys the impression that an occupant has no authority to keep the officers at arm's length. Scalia. But what's the basis for the decision below, though? The court below didn't say these police officers were behaving as though they had a warrant and were about to kick in the door. The opinion below just said, yes, there were exigent circumstances, but they were the result of the police knocking on the door and saying, we're the police. I don't disagree that the lower courts did not analyze the problem in this fashion, did not analyze the question in this fashion. But it's a legal question that calls for an examination of how a reasonable person would interpret the behavior.  of how a reasonable person would interpret the behavior. Sotomayor. The police officers' lawfulness. Now, I grant you that attempting, that there is something troubling about the police attempting to coerce entry as opposed to requesting entry. But as my colleagues have pointed out, it's not clear from this record which of the two the police did, in a loud voice or not. You're saying just a loud knock, a scream, police, that that would be coercive. That's how I'm reading you? Or are you going further and trying to say that as a matter of fact, the testimony is critically clear that they knocked loudly, said police, and said, let us in or we're going to bust it? The factual record is clear. The officer, Officer Cobb, testified. He banged as loud as possible. This is not the normal knock that an officer engages in when he's seeking consensual consent, you know, consent to search. And this is at 10 o'clock at night. He's saying, we announced police, police, police, exclamation point. That's how it appears in the record. Again. Roberts. So just to assume for my sake that the police comes to the door. It's not 10 o'clock at night, it's, you know, 6 o'clock at night. Knocks quietly on the door and says, we're the police, can we talk? And then there was the smell of marijuana. And then he hears the sounds that do convey to a reasonable police officer that evidence is being destroyed. At that point, can they enter without a warrant? Yes. Okay. Breyer. Okay. Could you add on to that? Look, the question presented that they raised, which of the five tests currently being used by the U.S. Court of Appeals is proper? Now, you've said something about your view on that, but I'd like you to say anything else you'd like to say about that, which of the five tests, or some six tests, if you like, and you tell me the words that you would like us to use when we answer that question. I would like this Court to adopt the test that we have proposed. Which is? Which is that an officer acts unreasonably when he or she conveys the impression that entry into a home is imminent and No, no, no, but the test you're using there, the key word is unreasonable. Yes, Your Honor. Okay. And the reason you choose the word unreasonable rather than the Second Circuit's test of unlawful is? Because, frankly, I'm not sure what that means. And I think that's become clear in the context of this briefing. Does unlawful mean the police have had to violate a provision of the penal code? Does unlawful mean, as the Commonwealth is contending, that there has to be a completed Fourth Amendment violation? You know, you don't know what unlawful means, but you know what unreasonable means? Yes. Unreasonable is the touchstone of every, you know, Fourth Amendment case. And so we're saying there does not have to be an antecedent completed Fourth Amendment violation. The question is, as is the case in every Fourth Amendment case, did the officers act? Do you have any doubt that it's unlawful for a police officer to threaten to burst into a home? No, Your Honor. So why do you need unreasonable? If, indeed, there was a threat of imminent entry, we're going to bust down the difference. If that was the threat, then it's unlawful, surely. Yes. And that's why my answer to Justice Kagan's question was, to the extent that unlawful and unreasonable are synonyms, we would agree. Now, if the Court is not terribly – does not find our test convincing, the next best test, we believe, is a foreseeability test. Is your test something novel? I mean, Justice Breyer mentioned that there are some five tests in the different circuits. And the foreseeability test is the one that the Kentucky Supreme Court used. But is your – does your test coincide with the test of any of the circuits, or is it different? Our test is a novel test that has not been, to my knowledge, considered by any of the other circuits. But your test is – I mean, it's not wild. It just says unreasonable in the Fourth Amendment. Probably when they act lawfully, they are acting reasonably, and not unreasonably. But it could be sometimes they're not. That's your view. That's correct. And by the way, we're not saying that – we're essentially saying the police shouldn't act as though they have a warrant when they don't have one, which is exactly what they did in this case, and that proposition is not new. In Bumper, this Court made clear that if the police act as though they have a warrant when they don't have one, any consent would be coerced. So review in courts are already making these determinations about how loud was the knock and how aggressive was the demand, simply in another context. And by the other – on the other hand, police officers are already receiving the same instruction that they would need in order to apply our rule, which is don't act as though you have a warrant, don't engage in the functional equivalent of a knock, and announce if you do not have prior judicial authority. And what is appealing about our test, unlike the foreseeability test, which we believe it's a refinement of, is it allows for conduct by the police that's reasonable at its inception to remain reasonable regardless of the suspect's response, no matter how foreseeable. Roberts. What is – what is an example of conduct that you would consider unreasonable resulting in suppression of the evidence that would not be unlawful? Well, it's very hard – it's very hard to conceive of where the daylight would be between those terms, reasonable and unlawful, so long as unlawful doesn't mean violation of a penal code provision, and so long as it doesn't mean, as the Commonwealth is suggesting, that there has to be – the defendant would have to first demonstrate that the police were seized in order to be able to convincingly argue that the search was unreasonable. So you can't – you can't give me one example of some conduct that's unreasonable under your test that would not be unlawful? I can't – I can't think of one, Your Honor. The problem is that, as reasonable as the test is, it's not the test that was used by the court below, and you want us to affirm the decision below, which simply said if the exigent circumstances are the consequence of the police action, whatever the police action was, lawful, reasonable, whatever, the evidence has to be excluded. How can we affirm that decision as you want us to do, even applying your test? Well, the factual record in this case is fully developed, and how a reasonable person would interpret the scenario is a mixed question of law and fact, which this Court would review the decision of the Kentucky Supreme Court in that regard de novo anyway. In that regard, it's no different than any other case that makes its way to this Court, where this Court is asked to review the record, make a determination of how an ordinary person would interpret the officer's conduct. It is simply unreasonable and unlawful for purposes of the Fourth Amendment for an officer to convey the impression that he has the authority of a warrant when he doesn't have one, and when that prompts, as it obviously would, an occupant of a home to move, and then that movement is used as evidence that exigent circumstances exist and warrantless search is justified. If this Court were to, you know, adopt the framework the Commonwealth is arguing for, the exception to the warrant requirement would be the rule. So we would ask this Court to affirm the decision of the Kentucky Supreme Court. Roberts. Thank you, counsel. Mr. Farley, you have 4 minutes remaining. My time is short, so I would just like to make a few quick points. I believe Mr. Chief Justice and Justice Kennedy were absolutely correct. The question before this Court is can lawful police action impermissibly create exigent circumstances? And the answer to that question is no. There is never a circumstance in which lawful police behavior under a Fourth Amendment analysis can impermissibly create an exigency. I would point the Court to Hodari D., which I believe Justice Scalia wrote for the Court, that we should not punish police officers for attempted Fourth Amendment violations or Fourth Amendment violations that do not reach fruition because it does not serve the point of the exclusionary rule. Mr. Farley, one of the points of the Fourth Amendment is to ensure that when people search your home, they have a warrant. And of course, there are exceptions to that. But if there is one place where the warrant requirement has real force, it's in the home. And I think that the concern here, and you have some strong arguments on your side, but the concern here is that your test is going to enable the police to penetrate the home, to search the home, without a warrant, without going to see a magistrate, in a very wide variety of cases. That all the police really have to say is, we saw a pot, we heard noise. Or we think there was some criminal activity going on for whatever reason, and we heard noise. How do you prevent that from happening? How do you prevent your test from essentially eviscerating the warrant requirement in the context of the one place that the Fourth Amendment was most concerned about? Well, Justice Kagan, I would disagree with you. I don't think that it would. I believe that what the Commonwealth is asking for is no more or no less than reviewing courts have done for generations. You look to determine whether there was a Fourth Amendment violation, whether there was an unlawful entry, whether there was an unlawful seizure, or whether there was a coercion, then they gained consent for entry. If those things occurred, they are clearly Fourth Amendment violations. There should be a suppression of the evidence. The exigent circumstances of the Fourth Amendment would not be a Fourth Amendment violation, would it, if the police gave the impression that they had a warrant and were about to kick in the door? Is that a Fourth Amendment violation in and of itself? I don't believe so. So your the unlawfulness test would not prevent that? No, Justice Scalia. It would not prevent it. It would not prevent them from doing anything. Oh, well, maybe we have to come up with an unreasonableness test, then. Well, I believe under Hodori D., if the officers demand entry and there is no response to that demand, there has been no completion of the Fourth Amendment violation. The officers could stand outside. It's perfectly okay for officers to do that, to pretend that they have a warrant. You know, open the door, we'll kick it in. That's perfectly okay. I believe that there are large restrictions and prohibitions to that that officers are well aware of, because if the person does answer the door, the officers know, well, everything is going to be suppressed. Or if the officers do not. Why? You say that what they've done is unlawful. Why would it be suppressed? Well, if they demand entry and entry is given, that is then a Fourth Amendment violation, because they've demanded entry without a warrant. And in that case, suppression, once they have entry, the evidence would be suppressed. But they can't gain entry by deception. They can't knock on the door and say, pizza, right? No. No. Okay. We would just assert that under the lawfulness test, we aren't asking for anything more or less than this Court has done or other reviewing courts have done for generations. This is a simple Fourth Amendment analysis. There was no demand in this case. This was a simple knock-and-announce case, regardless of the time of day. There was no coercion. There was no seizure. There was no consent given. Officers should not be held accountable for unlawful reactions by suspects. Thank you very much. Roberts. Roberts. You will have noticed that Justice Kennedy left the bench a few minutes early. He is going to Tucson to represent the Court as the circuit justice for the Ninth Circuit at the memorial service there. He will review the tapes and transcripts of the rest of the argument and fully participate in decision. This case is submitted.